IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EMILY V.,**[1]<br><br>    Plaintiff,<br><br>v.<br><br>**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,<br><br>    Defendant. | Case No. 3:23-cv-101-HL<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Andrew Hallman issued Findings and Recommendation in this case on September 6, 2024. Judge Hallman recommended that the Court reverse and remand the decision of the Commissioner to deny Plaintiff Emily V.'s application for child disability benefits and supplemental security income. Judge Hallman concluded that the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's subjective symptom testimony because the ALJ failed to evaluate the testimony with sufficient specificity. Judge Hallman also concluded that the ALJ erred in failing to evaluate the medical opinion of Plaintiff's treating

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – ORDER

physician, Dr. George Anadiotis. Judge Hallman determined that Dr. Anadiotis provided a medical opinion requiring consideration, when the ALJ had erroneously concluded that Dr. Anadiotis had failed to provide any statement relating to Plaintiff's functioning.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

The Commissioner timely filed an objection, to which Plaintiff responded. The Commissioner argues that the ALJ offered sufficiently specific reasons to discount Plaintiff's testimony, including by reciting detailed medical evidence and by mentioning that Plaintiff took over-the-counter medication. The Commissioner also argues that the ALJ correctly discounted Dr. Anadiotis's opinion because the portions addressing Plaintiff's limitations were in the

PAGE 2 – ORDER

"History of Present Illness" section and reflect Plaintiff's description of their limitations and not Dr. Anadiotis's evaluation of Plaintiff's limitations. The Court reviewed *de novo* the filings in the case and much of the underlying record and addresses each objection in turn.

### A. Plaintiff's Testimony

The Court agrees with Judge Hallman that the ALJ failed to evaluate Plaintiff's testimony with the requisite specificity. An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphases in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). The ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.* Here, the ALJ did not explain what evidence is inconsistent with Plaintiff's testimony about their ability to work and which aspects of Plaintiff's testimony she did not find credible.

The Commissioner argues, however, that the ALJ made sufficiently specific findings by referencing medical examinations that did not show limitations that could affect Plaintiff's ability to work. The Commissioner asserts that the ALJ "highlighted" with specific citations examinations showing that Plaintiff's joints were not unstable or dislocated, their gait was

steady, their motor strength and grip were full in all extremities, and they had normal muscle bulk and tone. But these citations are insufficient for at least three reasons.

First, citing specific medical evidence is insufficient without linking those specific medical examinations *to testimony*. The Ninth Circuit repeatedly has emphasized that an ALJ does not sufficiently evaluate a claimant's testimony by specifically reciting medical evidence, and that a court may not rely on that medical testimony and make inferences as to what testimony it contradicts, even if such inferences are logical. *See, e.g.*, *Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . [']is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his [residual functional capacity] and summarized the evidence supporting his determination," the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence").

Second, when deciding that "objective findings do not suggest [Plaintiff's] joint problems would cause them to miss work," the ALJ seemed to exclusively rely on Dr. Derek Leinenbach's conclusion that Plaintiff suffered no joint instability.[2] *See* AR (ECF 11-1) 428. But

---

[2] In her review of Plaintiff's medical examinations, the ALJ also discussed examinations conducted by Drs. Jennifer Willingham, Douglas Smyth, Christina Weiss, Susan Moner, Winifred Ju, M. Fountain, and Irmgard Friedburg. The opinions of Drs. Willingham, Smyth, and Weiss are limited to Plaintiff's emotional and mental wellbeing—not any physical concerns. *See, e.g.*, AR (ECF 11-1) 435 (Dr. Smyth notes that "[Plaintiff's] physical problems and limitations are beyond the scope of this evaluation."); AR 442 (Dr. Weiss discussing only psychological concerns); AR 473-74 (Dr. Willingham noting that Plaintiff was seen for mental health). To the extent that the other opinions discuss Plaintiff's physical health, they do not discuss Plaintiff's joint stability, and the ALJ cites them only for their discussion of Plaintiff's muscle bulk and tone. But Plaintiff does not claim that their muscular bulk inhibited their working ability. Rather, they cited—among other concerns—*joint* pain and *joint* stability. Thus, the Court does not find that these opinions contradict Plaintiff's symptom testimony about their joint pain and stability.

PAGE 4 – ORDER

Dr. Leinenbach does not provide opinions discussing Plaintiff's pain levels while she made those movements. Thus, to the extent that the ALJ used Dr. Leinenbach's report to discount Plaintiff's symptom testimony, the ALJ conflated evidence about joint stability with evidence about joint pain.

Third, the ALJ improperly cherry-picked the medical evidence. The ALJ ignored evidence that *supports* Plaintiff's subjective symptom testimony about high levels of joint pain. Specifically, the ALJ failed to consider the full range of opinions that Dr. Anadiotis,[3] Plaintiff's longtime treating geneticist specialist, provided during his examination of Plaintiff on February 26, 2019. *See* AR 372-73. The ALJ correctly noted that Dr. Anadiotis found that Plaintiff had "normal muscular strength and bulk." AR 372. Dr. Anadiotis *also* found, however, that "[o]ne of the significant differences between this visit and previous visits, is that [Plaintiff] is showing less flexibility due to significant pain issues." *Id.* Dr. Anadiotis further explained that flexing Plaintiff's fingers, touching their thumbs to their forearms bilaterally, and placing their palms on the flood with their knees locked "cause [Plaintiff] *considerable pain*." *Id.* (emphasis added).

The Court rejects the Commissioner's objection that Judge Hallman disregarded the ALJ's "conservative treatment" reason for discounting Plaintiff's testimony. The ALJ did not provide conservative treatment as a *reason* to discount Plaintiff's testimony. The ALJ mentioned in reciting Plaintiff's treatment history that Plaintiff took certain medications. That was the entirety of the ALJ's discussion, and the ALJ gave no indication that this was a reason to discount any testimony. The Court must disregard *post hoc* explanations. *See Bray v. Comm'r of*

---

[3] The Court notes that the parties also dispute whether Dr. Anadiotis's examination constitutes a medical opinion. For reasons discussed below, the Court finds that the portions of the examination discussed in this paragraph properly are considered medical opinions.

*Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**B. Dr. Anadiotis's Report**

Dr. Anadiotis divided his notes from the February 26, 2019 appointment into four main sections. First, he includes a section called "History of Present Illness," wherein he lists Plaintiff's history with Ehlers-Danlos Syndrome and Plaintiff's primary concerns for their appointment. AR 370-71. For example, he notes that Plaintiff "cannot sit or stand in the same position for more than 20 minutes without needing to shift due to pain," and that physical therapy made Plaintiff's joints hurt more. AR 371. Second, Dr. Anadiotis summarizes a review of Plaintiff's systems—such as their cardiovascular and musculoskeletal—and current medications. *Id.* Third, Dr. Anadiotis records his physical examination of Plaintiff. Of relevance to the pending motion is his note that although Plaintiff "is able to flex [their] fingers beyond 90 degrees, touch [their] thumbs to [their] forearms bilaterally, and [they are] also able to place [their] palms on the floor with [their] knees locked," "[a]ll of these motions cause [them] considerable pain." AR 372. Finally, in a section titled "Impression and Discussion" Dr. Anadiotis provides a discussion of Plaintiff's symptoms and his observations. He writes in relevant part:

> One of the significant differences between this visit and previous visits, is that [Plaintiff] is showing less flexibility due to significant pain issues, and many of the aspects of the exam such as touching [their] thumbs to [their] forearms bilaterally, or placing [their] palms on the floor with [their] knees locked, cause [them] to wince in pain. I think that there is a variety of things that need to be done. This kind of pain is not uncommon with individuals with Ehlers-Danlos and typically gets worse with the passage of time. . . . The family has become quite knowledgeable regarding this disorder

> and are mostly concerned with Emily's future, especially [their]
> ability to finish school, and then get a job, and have a productive
> life. I feel that those are very appropriate concerns. Hopefully,
> once we are able to manage [their] pain, then we can move forward
> with the other aspects such as getting back to school, finishing up,
> and moving on forward to college or university.

AR 372-73.

The Court agrees with the Commissioner that the comments made in the paragraph beginning with "Emily's primary concerns are . . ." located within the "History of Present Illness" section appear to be comments by Plaintiff, not medical opinions by Dr. Anadiotis. But setting this section aside, there are *other* portions of the report in which Dr. Anadiotis *does* present medical opinions related to Plaintiff's functional capacity. The more robust discussions of Plaintiff's functional capacity occur in the "Physical Examination" section and the "Impression and Discussion" section, in which Dr. Anadiotis discusses that basic movements caused Plaintiff "significant pain issues." Unlike the "History of Present Illness" section, these latter sections are *Dr. Anadiotis's* findings based on his observations and medical evaluation of Plaintiff.

The Commissioner responds that these portions of the exhibit are "general observations" that cannot be considered a medical opinion because the observations do not assess what Plaintiff can still do despite their impairments. The Court disagrees. Dr. Anadiotis's discussion of Plaintiff's flexibility and levels of pain address directly what Plaintiff can do despite their impairments. Moreover, Dr. Anadiotis's professional opinion that "*once* we are able to manage [their] pain, *then* we can move forward with the other aspects such as getting back to school," AR 373 (emphasis added), illustrates that he found Plaintiff's impairments so severe that they could not complete activities such as going to school under the circumstances. These conclusions regarding Plaintiff's functional capacity are properly considered medical opinions, and

PAGE 7 –   ORDER

accordingly, the ALJ's rejection of them because Dr. Anadiotis "did not provide an opinion as to the claimant's functioning" was in error. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Additionally, the new evidence submitted to the Appeals Council from Dr. Anadiotis warrants consideration. In his January 17, 2022 medical report, Dr. Anadiotis states that Plaintiff "is probably going to be unable to work a full-time position." AR 11. The Commissioner argues that this evidence is not a medical opinion but is an issue left for the Commissioner. The Commissioner is incorrect. In *Hill v. Astrue*, the Ninth Circuit rejected this rationale for denying a similar statement from a medical source. 698 F.3d 1153, 1160 (9th Cir. 2012). There, the ALJ ignored a doctor's opinion that the plaintiff's "likelihood of sustained full time competitive employment [was] unlikely." *Id.* The Commissioner argued that the ALJ's failure to address the doctor's statement was harmless because the doctor's opinion represented a conclusion on the ultimate issue of disability. *Id.* The Ninth Circuit disagreed, holding that the doctor's statement did not represent a conclusion on the plaintiff's disability but was an assessment of the plaintiff's "*likelihood* of being able to sustain full time employment given the many medical and mental impairments [the plaintiff] faces." *Id.* (emphasis in original).

The statement by Dr. Anadiotis is similar. He was discussing "questions regarding [Plaintiff's] diagnosis and its presentation." AR 11. He described various issues with Plaintiff's joints and pain and then stated that he supports Plaintiff's disability application because they probably will be unable to work. From context, it is clear that he is describing their symptoms and opining about the likelihood of their ability to sustain full time employment given their medical impairments, the same as the doctor in *Hill*.

PAGE 8 –  ORDER

## CONCLUSION

The Court ADOPTS IN PART Judge Hallman's Findings and Recommendation, ECF 22. The Court adopts all but Judge Hallman's discussion relating to the "History of Illness" section of Dr. Anadiotis's report. The decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ should reassess Plaintiff's subjective symptom testimony and Dr. Anadiotis's February 2019 and January 2022 medical opinions, and if appropriate, reformulate Plaintiff's RFC and proceed with the sequential analysis.

**IT IS SO ORDERED**.

DATED this 15th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge